**Kurt PAPENFUS, Plaintiff,**

v.

**FLAGSTAR BANKCORP, INC. and Hartford Life, Defendants.**

**Civil No. 07–10925.**

United States District Court, E.D. Michigan, Southern Division.

Oct. 18, 2007.

George S. Shea, Brashear, Tangora, Livonia, MI, for Plaintiff.

Kelly M. Drake Kevin, J. Moody Scott R., Eldridge Miller, Lansing, MI, for Defendant.

## OPINION AND ORDER

JOHN FEIKENS, District Judge.

Plaintiff Kurt Papenfus ("Papenfus") brought this suit against Defendants Flagstar Bankcorp, Inc. ("Flagstar") and Hartford Life ("Hartford") alleging that they wrongfully denied him $50,000 in proceeds from a life insurance policy on his deceased wife. Papenfus has moved for summary judgment arguing (1) that Defendants are estopped from denying him benefits and (2) that Defendants* decision to deny him benefits was arbitrary and capricious. For the reasons set forth below, I find that Defendants are estopped from denying Papenfus's claim. I, therefore, grant Papenfus's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Papenfus was employed by Flagstar and participated in an employee welfare benefit plan (the "Plan") that included spousal life insurance. The Plan was administered by Hartford. Papenfus elected $100,000 in life insurance for his wife. The enrollment form stated that "[a]mounts elected over $50,000 will require proof of good health."[1]

Another part of the Plan defined Evidence of Good Health: "Evidence of Good Health is information about a person's health from which We can determine if coverage or increases in coverage will be effective. Information may include questionnaires, physical exams, or written documentation as required by Us."[2] The Plan also contained information regarding notification. "We, your employer and/or Benefit Administrator will notify You of approvals. We will notify You, in writing, of any disapprovals."[3]

Defendants never asked Papenfus for evidence of his wife's good health and Papenfus never submitted any. After Papenfus completed the enrollment forms, the premium applicable for $100,000 in spousal life insurance was regularly deducted from his paycheck. In addition, each January, Papenfus received a "Benefit Statement" that indicated that he was covered by $100,000 of spousal life insurance.[4]

---

1. Exhibit A to Plaintiff's Response to Defendants' Motion to Amend the Scheduling Order and for Protective Order.

2. Exhibit B to Plaintiff's Response to Defendants' Motion to Amend the Scheduling Order and for Protective Order.

3. *Id.*

When Papenfus's spouse passed away, he made a claim for $100,000 in benefits. His claim for the full $100,000 was denied because he had not provided evidence of his wife's good health. As a result, he was paid $50,000. Hartford upheld the denial on appeal and Papenfus filed this action in Wayne County Circuit Court, bringing claims for breach of contract and promissory estoppel against both Hartford and Flagstar and an additional claim of negligence against Flagstar. Defendants removed this action to federal court because Papenfus's claims relate to the Employee Retirement Income Security Act ("ERISA"). Papenfus filed an amended complaint, recasting his claims as causes of action under ERISA and brought this motion for summary judgment claiming (1) that Defendants are estopped from denying his claim and (2) that their decision to deny his claim was arbitrary and capricious.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56 (c). A fact is material if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To show the existence of a genuine issue, the nonmoving party must have more than a scintilla of evidence to support its position;

there must be sufficient evidence that a jury could reasonably find for the nonmoving party. *See Id.* at 252, 106 S.Ct. 2505. In determining whether there is a genuine issue of material fact, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Estoppel

### 1. Applicability of Estoppel

■ The Sixth Circuit "has recognized that promissory estoppel is a viable theory in ERISA welfare benefit actions." *Moore v. LaFayette Life Insurance Company*, 458 F.3d 416, 428 (6th Cir.2006). "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir.1998). Estoppel claims "are not claims for denial of benefits and are, therefore, addressed in the first instance in the district court, requiring no deference to any administrator's action or decision." *Moore*, 458 F.3d at 427.

■ Because this action involves an ERISA welfare benefits plan, whether estoppel can be invoked hinges upon whether the claim is based on an ambiguous plan provision. A plan provision is ambiguous if it is subject to two or more reasonable interpretations. See *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir.1994). Defendants argue that under the language of the Plan Papenfus was required to submit evidence of good health

---

**4.** Exhibit C to Plaintiff's Response to Defendants' Motion to Amend the Scheduling Order

and for Protective Order.

for his wife in order to qualify for $100,000 in spousal life insurance. While this is certainly a plausible reading of Plan documents, it is not the only reasonable interpretation.

█ After reading the Plan, a reasonable person could believe that the Plan administrator is responsible for initiating the submission of evidence of good health and for informing an enrollee if his application is incomplete. The Plan defines evidence of good health as follows: "Evidence of Good Health is information about a person's health from which We can determine if coverage or increases in coverage will be effective. Information may include questionnaires, physical exams, or written documentation as required by Us." The phrase "as required by US" seems to indicate that the Plan administrator will inform the enrollee of what is required. This interpretation is further buttressed by the list of examples of evidence of good health found in the definition. It seems very unlikely that a potential enrollee is required under this Plan language to fill out a questionnaire, submit to an examination, or produce written documents without a specific request from the Plan administrator detailing what is required.

Plan documents addressing notification also support this reading: "We, your employer and/or Benefit Administrator will notify You of approvals. We will notify You, in writing, of an disapprovals." This language appears to place the onus on the Plan administrator to determine whether a plan enrollee is properly enrolled and notify him if he is not.

The strongest evidence that Plan documents are ambiguous comes from the parties themselves. In an email from Flagstar's Erin England ("England") to Hartford's Lisa Micele, England wrote that she was unsure whether it was Flagstar or Hartford that had erred in handling Papenfus's claim for benefits. "At this time I am requesting that the life claim be paid at the 100,000 because Kurt has been under the assumption he had spouse coverage at this amount and we have submitted monthly premiums supporting this amount since 05/01/03. I am uncertain as to if this was an administrative error on the end of Flagstar Bank or Hartford however my main concern is the claim is paid at 100,000."[5] England assumes that either Flagstar or Hartford made a mistake, rather than blaming Papenfus for not submitting the necessary evidence of good health. This evidence seems to show that because Plan language is ambiguous, even Flagstar and Hartford were unclear as to their responsibilities under the Plan.

For the reasons set forth above, I find that the Plan provisions in question are ambiguous as to whether the Plan administrator or the enrollee is responsible for initiating the submission of evidence of good health and for ensuring that the submitted evidence is sufficient.

### 2. Elements of Estoppel

█ Because the Plan provisions at issue are ambiguous, principles of estoppel may be applied to this matter. The Sixth Circuit has identified five elements to an estoppel claim: "(1) there must be conduct or language amounting to a representation of a material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true

5. Administrative Record, pg. 116.

facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment." *Moore,* 458 F.3d at 429–30 (quoting *Sprague,* 133 F.3d at 403). Papenfus must establish each element to prove his estoppel claim.

### a. Representation of Material Fact.

First, Papenfus must prove that Flagstar and Hartford represented a material fact. In support of this element, Papenfus has provided benefit statements from Flagstar indicating that he had $100,000 in life insurance on his spouse and showing the commensurate premium that was regularly deducted from his paychecks. In the email discussed above, Flagstar employee England explains that "Kurt has been under the assumption he had spouse coverage at this amount and we have submitted monthly premiums supporting this amount since 05/01/03."[6] England acknowledges that Flagstar and Hartford's actions led Papenfus to believe that he had $100,000 in spouse coverage. I find that in deducting the premiums for $100,000 in spousal life insurance from Papenfus's pay, sending him benefit statements indicating that he had $100,000 of life insurance on his wife, and failing to affirmatively inform Papenfus that his application was incomplete, Defendants represented to Papenfus that he had $100,000 of spousal life insurance.

### b. Defendants Aware of the True Facts

Second, Papenfus must prove that Flagstar and Hartford were aware of the true facts. Papenfus submitted his enrollment form to Defendants and paid his premium to them each month. When he filed his claim for benefits, Defendants denied Papenfus's claim because he had not submitted evidence of good health for his wife. Defendants had the same documentation they used to deny Papenfus's claim when they were accepting his premiums and sending him benefit statements. I, therefore, find that Defendants were aware of the true facts.

### c. Reasonable Belief

Third, Papenfus must prove that Defendants intended that the representation be acted on or that he reasonably believed that Defendants intended for him to rely on their representation. It was reasonable for Papenfus to believe that Defendants intended the premiums taken from Papenfus's paychecks, the benefit statements he received from Defendants, and the failure of Defendants to inform him that his application was incomplete to serve as proof that he had $100,000 in life insurance on his spouse. Flagstar Employee England appears to have reached the same conclusion when she urged that Papenfus's claim be paid in her email to Hartford.[7] I, therefore, find that Papenfus has established the third element.

### d. Papenfus Unaware of True Facts

Fourth, Papenfus must prove that he was unaware of the true facts. Papenfus enrolled for $100,000 in life insurance on his wife and paid the corresponding premium each month for more than two years. There is no evidence that he was aware that his application for enrollment was incomplete because he had not submitted proof of good health for his wife. I, therefore, find that Papenfus was unaware of the true facts.

### e. Reasonable Reliance Causing Detriment

Fifth and finally, Papenfus must prove that he reasonably relied on Defendants'

---

6. *Id.*

7. *Id.*

representations to his detriment. I find that Papenfus reasonably relied on Defendants' representations to his detriment in two ways. First, because Papenfus believed he had $100,000 in life insurance on his wife, he did not seek additional spousal life insurance. Papenfus enrolled and paid for $100,000 in spousal life insurance. His actions demonstrate that he wanted more than $50,000 in life insurance on his wife and relied on Defendants' representation that he had $100,000 in spousal life insurance to his detriment.

Second, because Defendants represented that Papenfus's application had been accepted and he was covered by $100,000 in spousal life insurance, he did not take action to provide the information that Defendants' ultimately decided his application was lacking. Had Defendants told Papenfus he needed to submit more information, it seems very likely he would have done so. But by deducting commensurate premiums from his paycheck and sending him benefit statements, Defendants led Papenfus to believe he was covered by $100,000 and did not need to take additional action to perfect his application. For these reasons, I find that Defendants' representations deterred Papenfus from seeking additional life insurance on his wife and from taking additional action to perfect his application.

Defendants argue that the facts of this case are similar to those presented by *O'Connor v. Provident Life*, a case in which my colleague Judge Lawson found that there was no detrimental reliance. 455 F.Supp.2d 670, 680 (E.D.Mich.2006). Judge Lawson's finding, however, was based largely on the fact that the language of the plan provision at issue in *O'Connor* was unambiguous, and, therefore, the plaintiff could not reasonably have relied on representations that contradicted the clear language of the plan. *Id.* That is not the case in this matter. The language of the Plan at issue in this action is ambiguous and Papenfus was reasonable in relying upon representations by Defendants that were in harmony with a plausible interpretation of the Plan language.

Defendants have not produced any evidence that raises a genuine issue of material fact concerning the issue of estoppel. Because I find that the Plan language in question is ambiguous and because Papenfus has successfully proven all of the necessary elements of an estoppel claim, I hold that Defendants are estopped from denying Papenfus's claim for $100,000 in benefits.

## C. Arbitrary and Capricious

Because I find that Defendants are estopped from denying Papenfus's claim, it is unnecessary to analyze whether Defendants' decision to deny the claim was arbitrary and capricious. I would, however, note that the administrative record submitted by Defendants does not include a reasoned report by a claim administrator. Without this report, it would be difficult to give any deference to the claim administrator's decision to deny Papenfus's claim.

## III. CONCLUSION

For the reasons set forth above, I grant summary judgment to Papenfus on the issue of estoppel and order Defendants to pay Papenfus's claim in full.

**IT IS SO ORDERED.**